67 So.3d 346 (2011)
S.C., Appellant,
v.
A.D., Appellee.
No. 2D10-953.
District Court of Appeal of Florida, Second District.
July 15, 2011.
*347 Sarah Baker Sultenfuss of Sarah Baker Sultenfuss, P.A., Dade City, for Appellant.
No appearance for Appellee.
WALLACE, Judge.
S.C. appeals a final judgment of injunction for protection against domestic violence without minor children after notice. The circuit court issued the injunction in favor of A.D. Because there is no competent, substantial evidence in the record to support the issuance of the domestic violence injunction, we reverse.
A.D. lived with her mother and S.C. from the time she was about six or eight years old until she was seventeen. During this time, A.D.'s mother and S.C. had a son. In 2004, A.D., her mother, and S.C. had an altercation. This incident resulted in the filing of criminal charges against S.C.[1] and the issuance of two injunctions for protection against domestic violence. One of the injunctions was in favor of A.D.'s mother; the other was in favor of A.D. Both injunctions were issued in 2005.[2] The circuit court denied a petition for a domestic violence injunction filed by A.D.'s mother on behalf of her son. S.C. did not appeal from the two injunctions issued against him and did not seek to have them dismissed. On July 18, 2008, for reasons not explained in the record, the circuit court dismissed the injunction issued in favor of A.D.'s mother. But the injunction for the protection of A.D. was still in effect up to the date of the hearing that resulted in the entry of the injunction at issue in this appeal.
After A.D.'s mother and S.C. separated, S.C. went to work for a private contractor in Iraq. On December 15, 2009, shortly after S.C. returned to Florida from Iraq, he attempted to contact his son at the youth's middle school. There, he was prevented from doing so by law enforcement officers, who apparently believedor were informedthat an injunction was in place for the protection of S.C.'s son. But there was no such injunction. Next, S.C. made an appointment at a medical clinic where his family had been long-time patients. A.D. worked at that clinic. S.C. testified that he was unaware of this fact. He testified further that as soon as he learned of A.D.'s employment at the clinic, he cancelled the appointment.
When A.D. discovered that S.C. had returned to Florida, she filed a new petition for protection against domestic violence. In her petition, A.D. alleged the facts pertaining to the 2004 incident and asserted that "[S.C.] is now back in town trying to see his son, and I'm scared he will do *348 anything he can to try and get ahold of him. He is a violent alcoholic and I don't trust him or what actions he will take." She also alleged that S.C. was drunk during the 2004 incident, cannot remember what happened, and blames her for not being able to see his son. A.D. added that S.C. "has nothing to lose," that the events of the past continue to haunt her, and that she does not want to see the man who "tried to ruin my life."
At the hearing on A.D.'s current petition, there was considerable focus on the 2004 incident that led to the issuance of the 2005 domestic violence injunction. But after the 2004 incident, there was never any contact between S.C. and A.D. A.D. knew that S.C. had returned to the area because she had heard about his attempt to contact her brother at his school and because she learned that S.C. had made an appointment at the medical clinic where she works. But S.C. did not attempt to contact her. Indeed, it appears that S.C. tried to avoid any contact with A.D. by cancelling his appointment at the clinic.
At the hearing on her petition, A.D. explained that she was seeking a new domestic violence injunction because she had been informed by the Clerk of the Pasco County Circuit Court that the 2005 injunction had been dismissed, that she feared that S.C. would "seek revenge because ... he doesn't remember what happened" on the night of the 2004 incident, and that S.C. was going to stalk her or harass her in an effort "to get a hold of my brother." She also testified that she wanted an injunction because the original one "should never have been dropped to begin with." Finally, A.D. testified that she did not want to become involved in S.C.'s attempts to communicate with his son, "because he cannot find out where his son is."
To summarize, other than repeating the facts upon which the 2005 injunction was based, A.D.'s reasons for petitioning the court for a new injunction were (1) her incorrect assumptionbased on the allegedly erroneous information provided by the Pasco County Clerkthat the existing injunction issued for her protection was no longer in effect, (2) her additional incorrect assumption that S.C. was not allowed to contact his son, and (3) that she did not want S.C. to involve her in his attempt to see his son, something which he had not attempted to do.
The circuit court observed that there was an existing indefinite injunction in place. However, noting that there was a considerable amount of misinformation and confusion about the status of that injunction, the trial court decided to issue a new injunction "because of this confusion over the other case." The circuit court reached this determination despite its acknowledgment that a new injunction would be "duplicative." The circuit court also noted that S.C. had been found guilty of a misdemeanor battery arising out of the 2004 altercation and indicated that it was, in part, basing its decision to issue the new injunction on that fact as well.
Section 741.30(1)(a), Florida Statutes (2009), provides that a family or household member[3] may file a petition for an injunction for protection against domestic violence if that person "is either the victim of domestic violence as defined in [section] 741.28 or has reasonable cause to believe he or she is in imminent danger of becoming the victim of any act of domestic violence." Section 741.28(2) defines domestic violence as "any assault, aggravated assault, *349 battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, false imprisonment, or any criminal offense resulting in physical injury or death of one family or household member by another family or household member."
The circuit court appears to have decided to issue the injunctionat least in partbased on the events that resulted in the issuance of the 2005 domestic violence injunction. This court has recently said that "an isolated incident of domestic violence that occurred years before a petition for injunction is filed will not usually support the issuance of an injunction in the absence of additional current allegations." Gill v. Gill, 50 So.3d 772, 774 (Fla. 2d DCA 2010) (comparing Jones v. Jones, 32 So.3d 772 (Fla. 2d DCA 2010), with Giallanza v. Giallanza, 787 So.2d 162 (Fla. 2d DCA 2001)).[4] This case is somewhat distinguishable from Gill, Jones, and Giallanza because here an injunction had been issued immediately following the 2004 incident, whereas in those cases it had not.
The trial court's rationale for issuing the injunction on appeal in this case was apparently that a prior, valid final judgment of injunction for protection against domestic violence was in danger of being violated and that A.D. had been misinformed about the status of that 2005 injunction. But neither of these factors provides a basis for the issuance of a new injunction for protection against domestic violence. Unlike the petitioner in Giallanza, A.D. did not testify to any behavior on the part of S.C. that, when coupled with the prior incident, could support the issuance of a new injunction. Where, as in this case, "fear alone is the `reasonable cause' alleged to support the injunction, then not only must the danger feared be imminent but the rationale for the fear must be objectively reasonable as well." Oettmeier v. Oettmeier, 960 So.2d 902, 904 (Fla. 2d DCA 2007) (citing Gustafson v. Mauck, 743 So.2d 614, 615 (Fla. 1st DCA 1999)). Here, there was no objectively reasonable basis for such fear. In fact, S.C. had not had any contact with A.D.or even attempted to contact hersince 2004. Finally, A.D. failed to allege any behavior by S.C. that would support a finding that he had violated the terms of the domestic violence injunction that was already in place. Had he done so, the appropriate course of action would have been to seek relief for the violation of the existing injunction,[5] not to issue another one.
Following the circuit court's ruling that it would issue a "duplicative" injunction, S.C.'s counsel asked the circuit judge if this meant that there would now be two active injunctions in place. The circuit judge responded that she would be happy to dissolve the other injunction if counsel wanted her to do so and asked counsel to prepare an order of dismissal. There is no such order of dismissal in our record. So we do not know if the 2005 injunction is still in effect or if it was dismissed after the hearing. If the circuit court dismissed the earlier injunction, our reversal of the new injunction raises the possibility that there will no longer be any injunction in *350 place for A.D.'s protection. But we need not address the propriety of any dismissal of the earlier injunction or direct that it be reinstated if it was dismissed because that matter is not before us.
This is a case driven by misinformation. An injunction was claimed to exist for the protection of A.D.'s brother that, in fact, did not exist. A.D. was led to believe that her perfectly valid and enforceable domestic violence injunction was not in force. Under these facts, we can appreciate the trial judge's desire to clear the air. But the new injunction was issued under circumstances where the only act of domestic violence had occurred five years earlier, and the petitioner failed to establish a reasonable fear that she was in imminent danger of becoming the victim of an act of domestic violence. And while we understand the trial judge's motives, we are unable to find any legal support for the issuance of a "duplicative" injunction based solely on the existence of an earlier valid and enforceable indefinite injunction. Under these unusual circumstances, we are obligated to reverse the judgment on appeal.
Reversed.
CASANUEVA and CRENSHAW, JJ., Concur.
NOTES
[1] After a jury trial, S.C. was found guilty of misdemeanor battery on A.D.
[2] The appellate record in this case is limited and does not include copies of the 2005 injunctions. Our account of the earlier proceedings is based on the testimony of the parties at the hearing held in 2010, the allegations in A.D.'s petition, and the final judgment entered on January 21, 2010.
[3] A.D. had standing to file the petition because she resided with S.C. "in the past as if a family." See §§ 741.28(3), .30(1)(e).
[4] In Jones, a pushing incident that occurred three years before the injunction was filed was held to be insufficient to support the issuance of an injunction. 32 So.3d at 773-74. In Giallanza, allegations of actual violence eight to ten years before the petition was filed were held to be sufficient when coupled with allegations that the husband had been angry and verbally abusive due to the couple's impending divorce. 787 So.2d at 164.
[5] Violation of a domestic violence injunction is a first-degree misdemeanor. § 741.31(4)(a).